OPINION OF THE COURT
 

 Chief Judge Kaye.
 

 After receiving a tip that stolen automobiles were being kept in the parking lot of an apartment complex in North Babylon, Suffolk County police staked out the location. Plaintiff Vernon Green, then 15 years old, arrived at the parking lot along with his brother and a few friends. Green and one of his friends got into a stolen Jeep Wrangler, with Green driving. The police
 
 *696
 
 blocked the exits with their vehicles and pursued Green and the others on foot. During the pursuit, Green drove the vehicle toward Police Officer Montgomery, who was attempting to stop his escape. There are two versions as to what next occurred. According to Montgomery, Green drove the Jeep at him, and he and another officer responded by firing at Green, wounding him in the head. According to Green, the officers began firing at him, without provocation, as the Jeep was coming to a stop.
 

 A Grand Jury charged Green with attempted murder in the second degree and reckless endangerment in the first degree, for driving the Jeep at Montgomery. The Grand Jury also charged Green with third-degree grand larceny and criminal possession of stolen property. Because Green was charged with attempted murder — an offense for which a juvenile may be held criminally responsible — the trial took place in Supreme Court rather than Family Court. Following a bench trial, the court found that Green had committed acts that, if committed by an adult, would constitute reckless endangerment in the first degree and criminal possession of stolen property in the third degree, and found in Green’s favor on the remaining counts. The court adjudicated Green a juvenile delinquent and imposed an unconditional discharge, stating in the commitment order that Green had been “convicted of/adjudicated a Juvenile Delinquent” for the crimes of reckless endangerment in the first degree and criminal possession of stolen property in the third degree.
 

 Green then commenced the present damages action in the United States District Court for the Eastern District of New York, alleging, among other things, that the police used excessive force in apprehending him. The District Court granted defendants’ motion for summary judgment and dismissed the case, holding that Green’s excessive force claim was precluded by the juvenile delinquency finding that he had committed acts constituting reckless endangerment. Since an element of the reckless endangerment charge was that Green created a “grave risk of death,” in the court’s view the officers’ use of deadly force was justified. The court further ruled that, since Green had “put at issue facts determined in his previous juvenile delinquency adjudication” by bringing a civil action, the juvenile delinquency adjudication could be used for collateral estoppel purposes despite Family Court Act § 381.2 (1), which bars its use against the juvenile “in any other court.”
 

 On Green’s appeal, the United States Court of Appeals for the Second Circuit noted that it is an open question whether,
 
 *697
 
 under New York law, a juvenile delinquency adjudication may be used as collateral estoppel in a subsequent civil suit. In addition, the Second Circuit questioned whether Supreme Court’s commitment order in the juvenile proceeding qualified as the equivalent of a Family Court delinquency adjudication for purposes of the confidentiality provisions of the Family Court Act. Thus, the Court certified to us the following questions:
 

 “(1) Is the New York Supreme Court’s commitment order stating that Green was ‘convicted of/ adjudicated a Juvenile Delinquent, for the crime [] of Reckless Endangerment 1st Degree’ to be treated as the equivalent of a Family Court adjudication of juvenile delinquency for the purpose of §§ 380.1 and 381.2 of the Family Court Act?”
 

 “(2) By bringing a § 1983 suit that places into question issues that were necessarily resolved by the Supreme Court in its decision that Green recklessly endangered Officer Montgomery, has Green waived any and all rights under New York state law not to have those determinations held against him, with the result that he can be collaterally estopped from relitigating .the Supreme Court’s findings?”
 

 We accepted certification (95 NY2d 829), and now answer both questions in the affirmative.
 

 As a rule, a juvenile delinquency adjudication cannot be used against the juvenile in any other court for any other purpose. Section 381.2 (1) of the Family Court Act provides that “[n] either the fact that a person was before the family court under this article for a hearing nor any confession, admission or statement made by him to the court or to any officer thereof in any stage of the proceeding is admissible as evidence against him or his interests in any other court.” The only statutory exception is that a court imposing sentence after an adult criminal conviction “may receive and consider the records and information on file with the family court unless such records and information have been sealed pursuant to section 375.1” (Family Ct Act § 381.2 [2]). Similarly, section 380.1 (1) states that “[n]o adjudication under this article may be denominated a conviction and no person adjudicated a juvenile delinquent shall be denominated a criminal by reason of such adjudication.”
 

 These provisions ensure that a juvenile delinquency adjudication is not treated as a crime. Delinquency proceedings are designed not just to punish the malefactor but also to extin
 
 *698
 
 guish the causes of juvenile delinquency through rehabilitation and treatment
 
 (Matter of Quinton A.,
 
 49 NY2d 328, 335). Indeed, a hallmark of the juvenile justice system is that a delinquency adjudication “cannot constitute a criminal conviction” and a juvenile delinquent “cannot be denominated a criminal” (Besharov and Sobie, Practice Commentaries, McKinney’s Cons Laws of NY, Book 29A, Family Ct Act § 380.1, at 551). Rather, a Family Court adjudication is a civil proceeding, and its purpose is to “supervise and guide a troubled youth”
 
 (Matter of Carmelo E.,
 
 57 NY2d 431, 435;
 
 but see, People v Gray,
 
 84 NY2d 709, 713-714 [trial court has discretion to permit use of a juvenile’s out-of-State conviction for impeachment purposes if the State in which the juvenile was convicted does not provide for the confidentiality of juvenile offenses]).
 

 Supreme Court Commitment Order
 

 The Second Circuit certified to us the question whether Supreme Court’s adjudication of Green as a juvenile delinquent qualifies as a Family Court determination for purposes of Family Court Act §§ 380.1 and 381.2. As defendants correctly concede, it does.
 

 With limited exceptions, a juvenile under age 16 “is not criminally responsible for conduct” (Penal Law § 30.00 [1]). Where a juvenile is charged with an offense for which he or she cannot be held criminally responsible, the Family Court has exclusive original jurisdiction over the delinquency proceedings
 
 (see,
 
 Family Ct Act § 302.1). Here, however, Green was charged with attempted second-degree murder, for which a 14- or 15-year-old can be held criminally responsible
 
 (see,
 
 Penal Law § 30.00 [2]). Therefore, Supreme Court properly assumed jurisdiction over the case
 
 (see,
 
 CPL 200.20 [6]).
 

 Supreme Court acquitted Green of the attempted murder charge and found that he committed only offenses for which he could not, as a juvenile, be held criminally responsible. Under such circumstances, the Criminal Procedure Law states that Supreme Court “must order that the verdict be deemed vacated and replaced by a juvenile delinquency fact determination,” and that the “action be removed to the family court” in accordance with CPL 725.00
 
 et seq.
 
 (CPL 310.85 [3]). Supreme Court did — as directed by the Criminal Procedure Law — enter a juvenile delinquency fact determination for the reckless endangerment and criminal possession of stolen property charges. It did not, however, order the action removed to Family Court. Thus, while the final juvenile delinquency adjudication should
 
 *699
 
 properly have been entered by the Family Court, it was in fact entered by Supreme Court.
 

 The confidentiality provisions of the Family Court Act apply here, even though the adjudication was entered by Supreme Court rather than Family Court. Under the New York Constitution, Supreme Court has concurrent jurisdiction with the Family Court (see, NY Const, art VI, § 7; see
 
 also, Kagen v Kagen,
 
 21 NY2d 532). Thus, Supreme Court had constitutional authority to enter the juvenile delinquency fact determination. Further, as the Practice Commentaries explain, the purpose of CPL 310.85 (3) is to ensure that, once juveniles are acquitted of all offenses for which they could be held criminally responsible, “[a] 11 further proceedings will then be in accordance with laws appertaining to the Family Court” (Preiser, Practice Commentaries, McKinney’s Cons Laws of NY, Book 11A, CPL 310.85, at 786). From that point forward, the case must be treated as if it were a Family Court proceeding. This ensures that a juvenile who commits acts that constitute juvenile offenses is, in fact, treated as a juvenile.
 

 Here, Supreme Court’s technical failure to send the case to Family Court for final disposition should not deprive Green of his statutory right to be treated like any other person adjudged a juvenile delinquent. Thus, sections 380.1 and 381.2 (1) of the Family Court Act apply.
 

 Waiver of the Statutory Privilege
 

 We nevertheless agree with the District Court that Green waived the statutory privilege by commencing the present lawsuit.
 

 By bringing a civil suit alleging that the police had used excessive force in apprehending him, Green placed at issue the very conduct for which he had been adjudicated a juvenile delinquent — whether he drove the Jeep at the police officers, which, in the District Court’s eyes, justified their firing in response. While placing that conduct at issue, Green seeks to use the privilege of sections 380.1 and 381.2 to bar evidence of his delinquency adjudication. In essence, Green seeks to use the confidentiality provisions as a sword to obtain a result in the civil suit inconsistent with his delinquency adjudication. That he cannot do.
 

 Privileges, while important in the law, are not absolute. Indeed, most rights and privileges are waivable, even such constitutional rights as the right to a jury trial, the right to ap
 
 *700
 
 peal and the right against self-incrimination
 
 (see, People v Seaberg,
 
 74 NY2d 1, 10). Further, when a privilege is designed to protect an individual by keeping certain information or conduct secret, that protection may be deemed waived where the individual affirmatively places the information or conduct in issue. In
 
 Dillenbeck v Hess
 
 (73 NY2d 278, 287), for example, this Court stated that a litigant waives the physician-patient privilege of CPLR 4504 when, “in bringing or defending a personal injury action, that person has affirmatively placed his or her mental or physical condition in issue”
 
 (see also, Koump v Smith,
 
 25 NY2d 287, 294). Otherwise, as we explained in
 
 Koump,
 
 a party would be able to use the privilege “as a sword rather than a shield,” and a party “should not be permitted to assert a mental or physical condition in seeking damages * * * and at the same time assert the privilege in order to prevent the other party from ascertaining the truth” (25 NY2d, at 294).
 

 As other New York courts have recognized, the confidentiality provisions of the Family Court Act may similarly be waived. In
 
 People v Johnson
 
 (90 Misc 2d 777, 780,
 
 revd on other grounds
 
 78 AD2d 298), a juvenile witness in a criminal proceeding gave misleading testimony about the disposition of charges brought against him in Family Court. The court permitted the witness’ juvenile records to be admitted as impeachment evidence, holding that the witness had waived the protection of the Family Court Act by giving misleading testimony (id., at 780-782). The court stated that the witness was “turning the shield of the privilege into a sword,” and that “the false implication created by the witness’ testimony could not be permitted to stand unimpeached”
 
 (id.,
 
 at 782). By the same token, in
 
 People v Harder
 
 (146 AD2d 286, 290-291), the court held that a criminal defendant would be entitled to examine confidential Family Court records of a prosecution witness if they contained information “material to the defense,” and ordered the trial court to inspect the records, on remittal, to determine if disclosure was required. As the court noted, “the statutory privilege of confidentiality” for Family Court records “is not absolute”
 
 (id.,
 
 at 290). By contrast, where the juvenile has not initiated the suit or otherwise affirmatively placed the prior proceedings at issue, the privilege may not be deemed waived
 
 (see, e.g., State Farm Fire & Cas. Co. v Bongiorno,
 
 237 AD2d 31;
 
 Holyoke Mut. Ins. Co. v Jason B.,
 
 184 AD2d 550, 552-553;
 
 Bartkowiak v St. Adalbert’s R. C. Church Socy.,
 
 40 AD2d 306, 308-309;
 
 Murphy v City of New York,
 
 273 App Div 492, 495).
 

 This case is also analogous to cases involving CPL 160.50, which mandates sealing of records where a criminal proceed
 
 *701
 
 ing has been terminated in favor of the accused. Like sections 380.1 and 381.2 of the Family Court Act, the purpose of CPL 160.50 is to protect accused individuals from the unauthorized use of their records. Where, however, an individual affirmatively places the underlying conduct at issue by bringing a civil suit, the courts have consistently held that the statutory protection is waived (see,
 
 e.g., Commercial Union Ins. Co. v Jones,
 
 216 AD2d 967, 968;
 
 Matter of Abrams v Skolnik,
 
 185 AD2d 407, 408-409;
 
 Kalogris v Roberts,
 
 185 AD2d 335, 335-336;
 
 Taylor v New York City Tr. Auth.,
 
 131 AD2d 460, 462). The privilege of CPL 160.50 may not be used “as a sword to gain an advantage in a civil action”
 
 (Taylor v New York City Tr. Auth., supra,
 
 at 462).
 

 Thus, we conclude that under the circumstances here, Green’s delinquency adjudication may be used for collateral estoppel purposes. Green affirmatively placed his conduct at issue by bringing the damages action, and he may not use the confidentiality provisions of the Family Court Act to unfair advantage. Our holding today comports with the purpose of collateral estoppel, which is to preserve fundamental fairness by preventing a party from relitigating “an issue that has already been decided against it”
 
 (Kaufman v Eli Lilly & Co.,
 
 65 NY2d 449, 455).
 

 Accordingly, both certified questions should be answered in the affirmative.
 

 Judges Smith, Levine, Ciparick, Wesley, Rosenblatt and Graffeo concur.
 

 Following certification of questions by the United States Court of Appeals for the Second Circuit and acceptance of the questions by this Court pursuant to section 500.17 of the Rules of the Court of Appeals (22 NYCRR 500.17), and after hearing argument by counsel for the parties and consideration of the briefs and the record submitted, certified questions answered in the affirmative.