OPINION OF THE COURT
Ira B. Warshawsky, J.
Third-party defendants in the malpractice portion of this case, Peter D. Hershman, Esq. and the law firm of Siegel, O’Connor, Schiff & Zangari, P.C., have requested information relevant to the retainer of Anne D’Elia by Richard Volpe, third-party plaintiff. Plaintiffs counsel joined this application. D’Elia produced her retainer agreement with Volpe but redacted the area entitled “Purpose of Employment.”
To recap a short history of the case, Goetz and Volpe were in business together but had numerous disagreements over their respective ownership interests in 2003. Goetz and Volpe were represented by the Siegel, O’Connor firm. Peter Hershman of that firm was creating documents to settle their disagreements.
D’Elia previously represented Volpe perhaps a year earlier. She began consulting again with Volpe in November and was retained by him on December 2, 2003. Prior to Volpe retaining D’Elia, Hershman had prepared documents settling the parties’ disagreements. Each party had individually signed the documents and returned them to Hershman (Nov. 2003). As of December 2, 2003, these documents had not yet been returned to the parties by Hershman. In an e-mail dated December 8, 2003, Goetz inquired if the deal was completed. On December 12, 2003, Hershman sent signed sets of documents to Goetz and Volpe. On December 16, 2003, Volpe discharged Hershman and the firm. It is clear that for at least a short period of time, while represented by Hershman, Volpe also was represented by Richard Minkoff and Anne D’Elia. Mr. Volpe has sued the Siegel, O’Connor firm for legal malpractice.
*634 Volpe cites conflict of interest by Siegel, O’Connor and various other reasons to support his professional malpractice claim, but the one that concerns us at the moment is his claim that he had directed Hershman to hold the signed agreements in escrow and that it was Hershman’s error to release them.
It is clear that Volpe was represented by D’Elia and Minkoff (different law firm than D’Elia) at the time Hershman released the agreements. Volpe did not accuse Hershman of any misconduct or raise any objection to the release of the documents at the time he discharged him on December 16, 2003.
Counsel for Goetz joins in the request for the retainer agreement and the right to question D’Elia as to whether Volpe discussed the alleged “escrow” concept with her to determine whether it was merely an afterthought to try to get out of their agreement. Counsel also argues that since D’Elia and Hershman were Volpe’s counsel at the same time, by suing Hershman, Volpe waived not only all attorney-client privilege concerning communication with Hershman but with D’Elia as well.
Counsel for Siegel, O’Connor urges the court to adopt the above position of complete waiver, citing Bank Brussels Lambert v Credit Lyonnais (Suisse), S.A. (210 FRD 506 [SD NY 2002]; see also Green v Montgomery, 95 NY2d 693, 701 [2001] [a waiver of privilege also extends to the client’s communications with a nondefendant law firm relating to the subject matter of the malpractice action (i.e., D’Elia)]; IMO Indus. v Anderson Kill & Olick, 192 Misc 2d 605 [NY County 2002]).
In Bank Brussels Lambert (supra), defendant bank Credit Lyonnais (Suisse), S.A. (CLS) brought a third-party action against its lawyer, Rogers & Wells. Rogers & Wells sought documents prepared by third-party plaintiffs in-house counsel and other outside counsel for CLS. Though these documents would ordinarily have been considered “work product” (documents prepared principally or exclusively to assist in anticipated or ongoing litigation) and cloaked with immunity, the federal magistrate concluded that third-party plaintiff waived attorney-client privilege and work product immunity because the documents were put “at issue” by the malpractice claim of CLS.
Without going further into the facts of Bank Brussels Lambert, third-party defendant believes it parallels our facts, requiring the production of the unredacted version of the retainer agreement.
The key becomes whether the attorney-client relationship between Volpe and D’Elia was in some fashion a filter for the *635 work done by Hershman. Did it in some way influence the relationship between Volpe and Hershman? Volpe’s claim is that the acts of Hershman and apparently his reliance on Hershman’s advice for a lengthy period was to his detriment. Therefore, the advice Volpe received from other lawyers on that advice, and most specifically the advice he received from other lawyers on the agreement, would relate to the reasonableness of Volpe’s reliance on the acts of Hershman.
New York courts have recognized a broad interpretation of the “at issue” theory of waiver. They have held that where “an individual affirmatively places the underlying conduct at issue by bringing a civil suit, the courts have consistently held that the statutory protection is waived.” (Green, 95 NY2d at 701.)
Where the action is a legal malpractice case, as is our third-party action, and where the third-party defendant law firm’s “representation . . . overlaps and is simultaneous to another firm’s representation of that client in the same matter, New York courts have found the client’s communications with the non-defendant law firm to lose its privilege as to the defendant law firm.” (Bank Brussels Lambert v Credit Lyonnais [Suisse], S.A., supra at 511; IMO Indus., supra.)
Volpe argues that Jakobleff v Cerrato, Sweeney & Cohn (97 AD2d 834 [1983]) dramatically limits the “at issue” doctrine and notes the third-party defendant failed to cite said case in its application.
In Jakobleff, the defendant law firm brought a third-party action against plaintiffs current lawyer, and moved to depose him on certain issues involving his communications with his client, the plaintiff.
There was no doubt the attorney-client privilege applied to these communications made between attorney and client for the purpose of obtaining legal advice and were privileged. (CPLR 4503.) Therefore, they were not discoverable unless the privilege is deemed to have been waived by the client. (CPLR 4503 [a].) A client who voluntarily testifies to a privileged matter or who publicly discloses it or allows her attorney to testify regarding it is deemed to have waived it.
None of these examples cover our situation. However, as stated earlier, a waiver may also be found where the client places the subject matter of the privileged communication in issue or where the invasion of the privilege is required to determine the validity of the client’s claim or defense and application of the *636 privilege would deprive the adversary of vital information. (Connell v Bernstein-Macaulay, Inc., 407 F Supp 420 [1976]; Hearn v Rhay, 68 FRD 574 [1975].)
The facts in the instant case do not resemble Jakobleff. The key difference is the short, but overlapping, representation of Volpe by D’Elia and Hershman. There are no specific documents in our case as there were in Bank Brussels Lambert; however, there is the retainer agreement and there may be testimony by Ms. D’Elia that could possibly go to the defense of the malpractice action, and, more specifically, whether she gave Volpe any advice about the settlement agreement prepared by Hershman and whether it bears on his “reasonable reliance” on the advice of Hershman and Siegel, O’Connor.
Part of the claim against Siegel, O’Connor is their failure to give independent legal advice and for a conflict of interest. It is only appropriate that third-party defendant be aware of why Ms. D’Elia was retained two weeks prior to Volpe’s termination of Siegel, O’Connor so that they may ascertain whether that retention is related to any part of their defense against the legal malpractice action, most specifically, if Volpe reasonably relied on their advice or did he have additional help from Minkoff and/or Ms. D’Elia, thus putting into doubt “reasonable reliance.”
Thus, the court finds that by making the malpractice claim as set forth in defendant third-party plaintiffs complaint, under the circumstances of our case, Volpe waived the privilege as to the contents of the retainer agreement as to third-party defendant only.
Volpe is to turn over to Hershman’s counsel the unredacted agreement. Said agreement is not to be provided to plaintiffs counsel at any time by any party to this action or their lawyers. This ruling shall not cause any delay of the deposition of Mr. Hershman which shall be conducted on or before February 6, 2006.