People v E.M. (2024 NY Slip Op 50097(U))

[*1]

People v E.M.

2024 NY Slip Op 50097(U)

Decided on January 30, 2024

Youth Part, Erie County

Freedman, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on January 30, 2024
Youth Part, Erie County

The People of the State of New York

against
E.M., D.C. AOs.

Docket No. FYC-74001-23/001

Denise Herman, Esq., (Assistant District Attorney)
Giovanni Genovese, Esq., (for the Principal AO D.C.) and Crystal M. Repka, Esq. (for the Principal AO E.M.)

Brenda M. Freedman, J.

The People having moved pursuant to Criminal Procedure Law, Article 722, § 722.23(1), et seq. for an order preventing removal of this action to the juvenile delinquency part of Erie County Family Court, and upon reading the Notice of Motion and Supporting Affidavit of Denise A. Herman, Esq. (Assistant District Attorney), dated January 19, 2024; the Reply Affirmation in Opposition of Crystal M. Repka, Esq., dated January 24, 2024, on behalf of AO E.M.; the Affirmation of Giovanni Genovese, Esq., dated January 26, 2024, on behalf of AO D.C.; oral argument and a hearing on the motion having been waived; and due deliberation having been had, the Court finds the following:
Procedural History
On December 18, 2023, AOs E.M. and D.C. (hereinafter referred to as "Defendants") allegedly participated in a robbery at 3540 Main Street, Amherst, New York. AO E.M. was subsequently charged under FYC-74001-23 with one count of Robbery in the Second Degree, in violation of PL 160.10(1), a class C felony; Criminal Possession of a Weapon in the Fourth Degree, in violation of PL 265.01(2), a class A misdemeanor; and one count of Criminal Possession of Stolen Property in the Fifth Degree, in violation of PL 165.40, a class A misdemeanor.
AO D.C. was subsequently charged under FYC-74002-23 with one count of Robbery in the Second Degree, in violation of PL 160.10(1), a class C felony.
The AOs were arraigned in Youth Part on December 19, 2023.
On December 22, 2023, the AOs appeared in this Court. The People conceded the six-day reading, and this Court found that these charges did not meet the requirements of CPL § [*2]722.23(2)(c) to remain in Youth Part. The People indicated that they would make a motion under CPL, Art. 722, § 722.23(1) requesting that this matter not be removed to Family Court.
Findings of Fact
It is alleged that on December 18, 2023, at approximately 7:40pm, a university student was walking through a plaza parking lot when he heard someone yell, "yo, you". Five individuals surrounded the student. Two males told him to give them everything. The student recalled that one male, later identified as AO D.C., was tall, dark-skinned, wearing glasses a black puffy jacket and a black mask. The other male, later identified as AO E.M., was light-skinned, with a short afro, wearing a dark ski mask and a red, white, and black jacket. As the youths approached the student, he saw an orange knife cover coming out of AO E.M.'s pants. The youths told him to give them his bag. He gave them his bag. They told him to give them his phone. He hesitated and asked to keep his phone. AO E.M. told him he needed to give up his phone or shoes. He gave up his shoes. They told him to give up his jacket, so he gave up his jacket. All five individuals then went back into the restaurant. The student returned to his nearby university campus and called Police.
Several officers responded to the robbery call. One officer witnessed a male with a red, white, and black puffy winter jacket walk in front of him when he entered the plaza parking lot, near the restaurant. The Officer later ascertained that individual to be AO E.M. The Officer, along with university police, proceeded to follow AO E.M. and detain him. AO E.M. told the Officer that he had no weapons. However, upon a pat down, the Officer felt a hard, elongated object. He recovered an orange and red knife with a green handle from his waistband in his jeans. When the Officer retrieved the knife from AO E.M.'s pants, he said he carried it for protection. The Officer also recovered the sheath for the knife from the same area of his waistband.
A second officer stated that when he pulled into the restaurant's parking lot, he saw a group of young black males wearing ski masks and winter jackets, which matched the description of the possible suspects. He saw two females run and third officer run after them. He drove around to the back of the restaurant and parked. At that time, he saw the females stop running and engage with the third officer. He also saw a suspect who he later identified as AO D.C. come up to them.
A show up was completed in a parking lot at the university. The student identified two of the five people that took his belongings. AO E.M. was found in possession of the student's backpack and sunglasses. The student's shoes, jacket, and various belongings in his backpack were not recovered.
Behavioral History
Probation reports for both youths are attached to the People's motion. Both Aos had been released on their own recognizance with voluntary probation services. The Youth Part Court Report for AO D.C., dated December 21, 2023, provides in part the AO D.C. is compliant with a Transition to Independence Program. However, he has only attended one day of classes this year for his GED program.
In the Youth Part Court Report for AO E.M., dated December 22, 2023, AO E.M.'s Mother states that AO E.M. left home after an argument weeks ago and has not returned home. The youth admitted that he has stayed with friends and family and has had to sleep on the street. [*3]But he refuses to return home. AO E.M. met with probation and his mother and agreed to stay at his sister's home or Compass House and keep probation informed of his whereabouts. AO E.M. did not advise probation where he was staying, and his mom did not know where he went. He did not go to his sisters or Compass House. On December 27, 2023, probation closed its voluntary services case, because AO E.M. ceased participation/contact with probation.
The People further allege that during their investigation of this case, they discovered that AO E.M. was allegedly involved in a group that harassed multiple complainants on December 7, 2023. AO E.M. is alleged to have kicked a complainant in the back. He received a juvenile delinquency appearance ticket for harassment in connection with that matter.
Conclusions of Law
Pursuant to CPL § 722.23(1)(a), the Court shall order removal of the action to Family Court unless, within 30 days of arraignment, the District Attorney makes a written motion to prevent removal of the action. 
Pursuant to CPL § 722.23(1)(d), the Court shall deny the district attorney's motion to prevent removal unless the Court determines that extraordinary circumstances exist that should prevent the transfer of the action to Family Court. CPL § 722.23 does not define the term "extraordinary circumstances".
In People v T.P., 73 Misc 3d 1215(A) (NY Co Ct 2021), the Court referenced the common dictionary and the legislative history of the Raise the Age legislation and interpreted "extraordinary circumstances" to mean that "the People's Motion Opposing Removal must be denied unless they establish the existence of an 'exceptional' set of facts which 'go beyond' that which is 'usual, regular or customary' and which warrant retaining the case in the Youth Part instead of removing it to the Family Court."
New York State Assembly members debating the Raise the Age legislation indicated that the extraordinary circumstances requirement was intended to be a "high standard" for the District Attorney to meet, and denials of transfers to Family Court "should be extremely rare". NY Assembly Debate on Assembly Bill A03009C, Part WWW, at 39, April 8, 2017; see also, People v S.J., 72 Misc 3d 196 (Fam Ct 2021). "[T]he People would satisfy the 'extraordinary circumstances' standard where 'highly unusual and heinous facts are proven and there is a strong proof that the young person is not amenable or would not benefit in any way from the heightened services in the family court'. People v T.P., 73 Misc 3d 1215(A) (NY Co Ct 2021) citing Assembly Record, p. 39.
The legislators indicated that in assessing "extraordinary circumstances", the Judge should consider the youth's circumstances, including both aggravating factors and mitigating circumstances. People v T.P., 73 Misc 3d 1215(A) (NY Co Ct 2021); Assembly Record, pp. 39 to 40. Aggravating factors make it more likely that the matter should remain in Youth Part, and mitigating circumstances make it more likely that the matter should be removed to Family Court. People v S.J., 72 Misc 3d 196 (Fam Ct 2021).
Aggravating factors include whether the AO: (1) committed a series of crimes over multiple days, (2) acted in an especially cruel and heinous manner, and (3) led, threatened, or coerced other reluctant youth into committing the crimes before the court. People v S.J., 72 Misc 3d 196 (Fam Ct 2021); Assembly Record, p. 40.
Mitigating circumstances are meant to include a wide range of individual factors, including economic difficulties, substandard housing, poverty, difficulties learning, educational [*4]challenges, lack of insight and susceptibility to peer pressure due to immaturity, absence of positive role models, behavior models, abuse of alcohol or controlled substances by the AO, or by family or peers. People v S.J., 72 Misc 3d 196 (Fam Ct 2021); Assembly Record at 40.
"The People may not, in any way, use the [AO's] juvenile delinquency history, including any past admissions or adjudications, in any application for removal under the statute." People v J.J., 74 Misc 3d 1223(A) [NY Co Ct 2022]; citing Family Court Act § 381.2(1); see also, People v. M.M., 64 Misc 3d at 269, supra, citing Green v. Montgomery, 95 NY2d 693, 697 (2001). 
CPL § 722.23(1)(b) mandates that every motion to prevent removal of an action to Family Court "contain allegations of sworn fact based upon personal knowledge of the affiant." This Court considered only those exhibits and documents whose content fall within the mandate of CPL § 722.23(1)(b) in making this decision.
It is alleged that five youths, including AO E.M. and AO D.C., surrounded a young man and robbed him. While he was being robbed, the victim saw a knife cover coming out of AO E.M.'s pant. While this incident is disturbing and alarming, this is not the type of egregious case that the legislature envisioned would remain in Youth Part. It is not alleged that AO E.M. brandished the knife or that either AO physically harmed the victim. Neither AO has any other Youth Part matters pending, and it is not alleged that either AO has a criminal record.
This Court finds that the People failed to meet their burden of proving that these youth are not amenable to or would not benefit in any way from the heightened services in Family Court. These youths will need to comply with those services offered in Family Court, or they will risk being placed on probation or in a residential facility outside of their home.
Extraordinary circumstances do not exist to prevent the transfer of these actions to Family Court. The People did not meet its burden to prevent removal of these matters to Family Court.
These matters shall be removed to Erie County Family Court.
This constitutes the opinion, decision, and order of this Court.
SO ORDERED.
ENTER,
_____________________________________
HON. BRENDA M. FREEDMAN