People v K.K. (2024 NY Slip Op 50333(U))

[*1]

People v K.K.

2024 NY Slip Op 50333(U)

Decided on March 21, 2024

Youth Part, Erie County

Freedman, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on March 21, 2024
Youth Part, Erie County

The People of the State of New York

against
K.K., AO.

Docket No. FYC-70421-24/001

Denise Herman, Esq., (Assistant District Attorney) 
Connor Dougherty, Esq., (for the Principal AO K.K.)

Brenda M. Freedman, J.

The People having moved pursuant to Criminal Procedure Law, Article 722, § 722.23(1), et seq. for an order preventing removal of this action to the juvenile delinquency part of Erie County Family Court, and upon reading the Notice of Motion and Supporting Affidavit of Denise Herman, Esq. (Assistant District Attorney), dated March 11, 2024; responsive papers having been filed on March 18, 2024 by Connor C. Dougherty, Esq., on behalf of AO K.K.; oral argument and a hearing on the motion having been waived; and due deliberation having been had, the Court finds the following:
Procedural History
AO K.K. is charged under FYC-70421-24 with one count of Criminal Possession of a Weapon in the Second Degree, in violation of Penal Law § 265.03(3), a class C felony and one count of Obstructing Governmental Administration in the Second Degree, in violation of Penal Law § 195.05, a misdemeanor.
On February 12, 2024, Accessible Magistrate Carney arraigned AO K.K. and released him to his Mother's custody.
On February 13, 2024, AO K.K. appeared for an arraignment in Youth Part, entering a plea of not guilty. The People conceded the six-day reading. This Court found that these charges did not meet the requirements of CPL § 722.23(2)(c) to remain in Youth Part. The People indicated that they would make a motion under CPL, Art. 722, § 722.23(1) requesting that this matter not be removed to Family Court. The decision date of the extraordinary circumstances motion was scheduled for March 25, 2024. AO K.K. was released under probation supervision, with a curfew, an ankle monitor at Probation's discretion, and various other conditions.

Findings of Fact
It is alleged that on February 11, 2024 at approximately 9:00PM, Police officers responded to two gun calls—one a shots fired call and the other a fight with guns call—in two adjacent areas. One Officer observed AO K.K. walk in front of his patrol vehicle, reach into his pocket, and grab an object. The Officer and his partner called out to the AO and asked him about shots being fired, and AO K.K. took off running. The Officer saw a dark colored object in AO K.K.'s hand that looked like a handgun as he was running; he then observed AO K.K. run into a house.
The Officer went to the house, announced his presence as a police officer, and asked the occupants to open the door. AO K.K. came outside wearing some of the same clothes he had been wearing earlier and was out of breath and sweating. The owner of the home (AO K.K.'s mother) signed a consent to search. While inside the home, it was ascertained that the firearm the Officer saw while he was running was stashed under AO K.K.'s mother's mattress. The Officer recovered one Reck P8 Kai firearm, which was loaded with nine live rounds. Additionally, the Officer observed approximately two eight balls of crack/cocaine in plain view in an open dresser drawer in the bedroom where the gun was found. The Officer recovered the drugs for destruction purposes because there was a child in the home. The police did not charge anyone with criminal possession of a controlled substance.
Another Officer heard a call that a male with a gun was with a female running into the home discussed above. Upon arrival, the Officer saw a live round near the living room doorway. Upon speaking with the residents of the home, they agreed to allow the Officers to search the living room. The Officer then returned to his patrol vehicle to retrieve a consent to search. While walking back to his vehicle, he saw AO K.K. in the back of a patrol vehicle. The Officer knew AO K.K. from a previous job. AO K.K. asked the Officer if his mom was going to jail for this. He responded that he did not know what he was talking about. AO K.K. asked the Officer if he could prevent his mom from going to jail if he told the Officer where the gun was located. The Officer responded that it was not his call. AO K.K. then said that the gun was under his mother's bed. The Officer told the other officers who were inside the home, and the gun was recovered. After the gun was recovered, AO K.K. screamed to his mother that he only had the gun because he had previously been shot.

Conclusions of Law
Pursuant to CPL § 722.23(1)(a), the Court shall order removal of the action to Family Court unless, within 30 days of arraignment, the District Attorney makes a written motion to prevent removal of the action. 
Pursuant to CPL § 722.23(1)(d), the Court shall deny the district attorney's motion to prevent removal unless the Court determines that extraordinary circumstances exist that should prevent the transfer of the action to Family Court. CPL § 722.23 does not define the term "extraordinary circumstances".
In People v T.P., 73 Misc 3d 1215(A) (NY Co Ct 2021), the Court referenced the common dictionary and the legislative history of the Raise the Age legislation and interpreted "extraordinary circumstances" to mean that "the People's Motion Opposing Removal must be denied unless they establish the existence of an 'exceptional' set of facts which 'go beyond' that which is 'usual, regular or customary' and which warrant retaining the case in the Youth Part instead of removing it to the Family Court."
New York State Assembly members debating the Raise the Age legislation indicated that [*2]the extraordinary circumstances requirement was intended to be a "high standard" for the District Attorney to meet, and denials of transfers to Family Court "should be extremely rare". NY Assembly Debate on Assembly Bill A03009C, Part WWW, at 39, April 8, 2017; see also, People v S.J., 72 Misc 3d 196 (Fam Ct 2021). "[T]he People would satisfy the 'extraordinary circumstances' standard where 'highly unusual and heinous facts are proven and there is a strong proof that the young person is not amenable or would not benefit in any way from the heightened services in the family court'. People v T.P., 73 Misc 3d 1215(A) (NY Co Ct 2021) citing Assembly Record, p. 39.
The legislators indicated that in assessing "extraordinary circumstances", the Judge should consider the youth's circumstances, including both aggravating factors and mitigating circumstances. People v T.P., 73 Misc 3d 1215(A) (NY Co Ct 2021); Assembly Record, pp. 39 to 40. Aggravating factors make it more likely that the matter should remain in Youth Part, and mitigating circumstances make it more likely that the matter should be removed to Family Court. People v S.J., 72 Misc 3d 196 (Fam Ct 2021).
Aggravating factors include whether the AO: (1) committed a series of crimes over multiple days, (2) acted in an especially cruel and heinous manner, and (3) led, threatened, or coerced other reluctant youth into committing the crimes before the court. People v S.J., 72 Misc 3d 196 (Fam Ct 2021); Assembly Record, p. 40.
Mitigating circumstances are meant to include a wide range of individual factors, including economic difficulties, substandard housing, poverty, difficulties learning, educational challenges, lack of insight and susceptibility to peer pressure due to immaturity, absence of positive role models, behavior models, abuse of alcohol or controlled substances by the AO, or by family or peers. People v S.J., 72 Misc 3d 196 (Fam Ct 2021); Assembly Record at 40.
"The People may not, in any way, use the [AO's] juvenile delinquency history, including any past admissions or adjudications, in any application for removal under the statute." People v J.J., 74 Misc 3d 1223(A) [NY Co Ct 2022]; citing Family Court Act § 381.2(1); see also, People v. M.M., 64 Misc 3d at 269, supra, citing Green v. Montgomery, 95 NY2d 693, 697 (2001).
CPL § 722.23(1)(b) mandates that every motion to prevent removal of an action to Family Court "contain allegations of sworn fact based upon personal knowledge of the affiant." This Court considered only those exhibits and documents whose content fall within the mandate of CPL § 722.23(1)(b) in making this decision.
Extraordinary circumstances that should prevent the transfer of the action to Family Court do not exist here. These facts here are not exceptional. The People allege that, while responding to a "shots fired" call, police officers saw AO K.K. running with a gun in his hand. Officers later searched AO K.K.'s mother's room; they recovered the gun from under her mattress, and they saw two eight balls of crack/cocaine in her open dresser. Defense counsel alleges that AO K.K. had gone to a neighbor's home to watch the Super Bowl. As he was walking home, two officers pulled up to AO K.K. on the wrong side of the street and ordered him to stop. Defense counsel argues that the Officers ordered AO K.K. to stop with very little, if any, reason to do so. It is not clear that the officers continued to the scene where the shots were fired.
The People do not allege that AO K.K. fired the gun or otherwise used the gun in furtherance of any crimes. There are no aggravating factors here. AO K.K. did not commit a series of crimes over multiple days, act in an especially cruel and heinous manner, or lead, threaten, or coerce other reluctant youth into committing the crimes before the court. However, [*3]there are mitigating circumstances. The fact that police recovered crack cocaine from an open drawer in AO K.K.'s mother's bedroom suggests that AO K.K. lacks positive behavior models and support at home.
This Court finds that the People failed to meet their burden of proving that this young person is not amenable to or would not benefit in any way from the heightened services in Family Court. Defense counsel states that AO K.K. has attended every scheduled appointment with Probation, but for one appointment when he did not have transportation. Even though he was unable to physically attend the meeting, he called his Probation Officer to explain the situation. He has fully abided by his curfew since it was set. He is participating in community-based programs and is registered for a GED program this Fall.
This is not the rare, "one out of 1,000 cases" that the Legislature envisioned would remain in the Youth Part and not be removed to Family Court. (Assembly, Record of Proceedings, April 8, 2017, pp. 37-38); see People v J.M., 64 Misc 3d 259, 268 [NY Co Ct 2019]. Extraordinary circumstances do not exist to prevent the transfer of this action to Family Court. This matter shall be removed.
This constitutes the opinion, decision, and order of this Court.
SO ORDERED.
ENTER,
HON. BRENDA M. FREEDMAN