People v Guerrero (2025 NY Slip Op 00766)

People v Guerrero

2025 NY Slip Op 00766

Decided on February 7, 2025

Appellate Division, Fourth Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on February 7, 2025
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Fourth Judicial Department

PRESENT: SMITH, J.P., BANNISTER, MONTOUR, GREENWOOD, AND KEANE, JJ.

893 KA 22-01437

[*1]THE PEOPLE OF THE STATE OF NEW YORK, RESPONDENT,
v
ERRICK GUERRERO, DEFENDANT-APPELLANT. 

KEEM APPEALS, PLLC, SYRACUSE (BRADLEY E. KEEM OF COUNSEL), FOR DEFENDANT-APPELLANT.
WILLIAM J. FITZPATRICK, DISTRICT ATTORNEY, SYRACUSE (ELISABETH DANNAN OF COUNSEL), FOR RESPONDENT. 

 Appeal from a judgment of the Onondaga County Court (Stephen J. Dougherty, J.), rendered July 27, 2022. The judgment convicted defendant upon a jury verdict of burglary in the first degree (two counts) and robbery in the first degree. 
It is hereby ORDERED that the judgment so appealed from is affirmed.
Memorandum: Defendant appeals from a judgment convicting him upon a jury verdict of robbery in the first degree (Penal Law § 160.15 [3]) and two counts of burglary in the first degree (§ 140.30 [2], [3]), arising out of a home invasion robbery committed when defendant was 17 years old. We affirm.
Defendant contends that County Court (Bogan, A.J.) erred in granting the People's motion pursuant to CPL 722.23 (1) (b) to prevent removal of defendant's case to Family Court. We reject that contention. In 2017, the New York State Legislature enacted the Raise the Age Law, which defines a person who was charged with a felony committed on or after October 1, 2018 when the person was 16 years old, or committed on or after October 1, 2019 when the person was 17 years old, as an " '[a]dolescent offender' " (CPL 1.20 [44]; see Penal Law § 30.00 [1], [3] [a]). The Raise the Age Law created in each county a youth part of the superior court to make appropriate determinations with respect to the cases of, inter alia, adolescent offenders (see CPL 722.10 [1]). Where, as here, an adolescent offender is charged with a violent felony as defined in Penal Law § 70.02, within six calendar days of the adolescent offender's arraignment, the youth part of superior court is required to review the accusatory instrument and determine whether the prosecutor has proven by a preponderance of the evidence that the adolescent offender caused "significant physical injury" to someone other than a participant in the crime, displayed a "firearm, shotgun, rifle or deadly weapon as defined in the penal law" in furtherance of the crime, or unlawfully engaged in sexual intercourse, oral sexual conduct, anal sexual conduct or sexual contact as defined in section 130.00 of the Penal Law (CPL 722.23 [2] [a], [c]). If none of those factors exist, the matter must be transferred to Family Court unless the prosecutor moves to prevent the transfer of the action to Family Court and establishes that extraordinary circumstances exist (see CPL 722.23 [1] [d]). While the term "extraordinary circumstances" is not defined in the statute, the legislative history for CPL 722.23 reveals that, in making an extraordinary circumstances determination, courts should "look at all the circumstances of the case, as well as . . . all of the circumstances of the young person," including both mitigating and aggravating factors (NY Assembly Debate on 2017 NY Assembly Bill A3009C, April 8, 2017 at 39; see id. at 40, 65). That approach takes into consideration all of the circumstances, and ensures that "every case is going to be looked at by the judge individually, to determine what kind of factors . . . there are in the case, to determine" whether there are extraordinary circumstances (id. at 83-84; see id. at 85, 102). The court's determination must be made "in writing or on the record within five days of the conclusion of the hearing or submission by the defense, whichever is later," and must include "findings of fact and to the extent [*2]practicable conclusions of law" (CPL 722.23 [1] [e]).
Initially, contrary to defendant's contention, the court's determination granting the prosecutor's motion to prevent the removal of the action complied with the requirements of CPL 722.23 (1) (e) inasmuch as it was made on the record and contained "findings of fact and to the extent practicable conclusions of law."
Contrary to defendant's further contention, we conclude that the court did not abuse its discretion in granting the prosecutor's motion to prevent removal inasmuch as the prosecutor established that there are extraordinary circumstances. As an initial matter, we agree with defendant that defendant's prior adjudications as a juvenile delinquent or any evidence obtained as a result of those proceedings cannot be used in determining whether to grant the People's motion (Family Ct Act § 381.2 [2]; Green v Montgomery, 95 NY2d 693, 697 [2001]; see People v C.J., 73 Misc 3d 1233[A], 2021 NY Slip Op 51227[U], *4-5 [Nassau County Ct 2021]; People v M.M., 64 Misc 3d 259, 269-271 [Nassau County Ct 2019]). Nevertheless, although it is impermissible to raise any issue related to the adjudication or evidence obtained therefrom, it is still permissible to raise " 'the illegal or immoral acts underlying such adjudications' " (People v Gray, 84 NY2d 709, 712 [1995]; see generally People v Coggins, 198 AD3d 1297, 1300 [4th Dept 2021], lv denied 38 NY3d 1032 [2022]; People v Updyke, 133 AD3d 1063, 1064 [3d Dept 2015]).
Here, there is no dispute that defendant was charged with participating in a violent crime, i.e., a home invasion robbery involving weapons and resulting in injuries to the victim. Moreover, despite the various services and programs provided to defendant over the last five years while defendant had been involved in the criminal justice system, defendant has made no appreciable positive response and continues to engage in escalating criminal behavior. Thus, we conclude that, under the totality of the circumstances, and taking into account the mitigating factors and the substantial aggravating factors, the court did not abuse its discretion in determining that extraordinary circumstances exist warranting that this case remain in the youth part (see People v J.K., 78 Misc 3d 1221[A], 2023 NY Slip Op 503212[U], *2-3 [Youth Part, Erie County 2023]; People v P.P., 78 Misc 3d 1222[A], 2023 NY Slip Op 50324[U], *3-4 [Youth Part, Erie County 2023]; People v T.P., 73 Misc 3d 1215[A], 2021 NY Slip Op 51048[U], *3-4 [Nassau County Ct 2021]).
Defendant further contends that the court erred in denying defendant's motion to strike the People's certificate of compliance and dismiss the indictment based on the prosecutor's alleged cumulative errors and omissions that rendered the certificate of compliance invalid. Defendant's contention is unpreserved for our review inasmuch as defendant did not move, in writing, to invalidate the certificate of compliance or for dismissal of the indictment on that ground (see CPL 210.20 [1] [g]; 210.45 [1]; People v Elmore, 211 AD3d 1536, 1538 [4th Dept 2022], lv denied 42 NY3d 938 [2024]). We decline to exercise our power to review that contention as a matter of discretion in the interest of justice (see CPL 470.15 [6] [a]).
Defendant's contention that the evidence is legally insufficient to establish his guilt of burglary in the first degree under Penal Law § 140.30 (2) because the victim did not sustain a physical injury is unpreserved for appellate review inasmuch as it was not raised with specificity in his motion for a trial order of dismissal (see CPL 470.05 [2]; People v Cruz, 137 AD3d 1158, 1159 [2d Dept 2016], lv denied 28 NY3d 970 [2016]; People v Williams, 125 AD3d 1300, 1301 [4th Dept 2015], lv denied 26 NY3d 937 [2015]). We reject defendant's further contentions that the evidence is legally insufficient to establish his identity as one of the perpetrators and the unlawful entry element of the burglary charges. The unlawful entry into the house was established by the trial testimony that defendant and his accomplices, all wearing masks, entered the victim's home and immediately confronted the victim with weapons and demanded money (see People v Mosley, 200 AD3d 1664, 1665-1666 [4th Dept 2021]). Moreover, two of defendant's accomplices testified at trial that they went with defendant and a fourth person to the victim's home to rob the victim and their testimony placed defendant at the scene of the crimes. Additionally, viewing the evidence in light of the elements of the crimes as charged to the jury (see People v Danielson, 9 NY3d 342, 349 [2007]), we conclude that the verdict is not against the weight of the evidence (see generally People v Bleakley, 69 NY2d 490, 495 [1987]).
Defendant's sentence is not unduly harsh or severe. We have reviewed defendant's [*3]remaining contentions and conclude that they do not warrant modification or reversal of the judgment.
All concur except Montour, J., who dissents and votes to reverse in accordance with the following memorandum:
Inasmuch as I conclude that County Court (Bogan, A.J.) abused its discretion as a matter of law in granting the People's motion pursuant to CPL 722.23 (1) (b) to prevent removal of defendant's case to Family Court and would therefore reverse the judgment, deny the People's motion, and remit the matter to County Court for further proceedings in accordance with CPL 722.23, I dissent.
As relevant here, under the Raise the Age Law, in cases involving an "adolescent offender" (AO) (CPL 1.20 [44]; see Penal Law § 30.00 [1], [3] [a]), such as defendant, who is charged with a violent felony as defined in Penal Law § 70.02 (see CPL 722.23 [2] [a]) but where none of the factors set forth in CPL 722.23 (2) (c) are present, "the court shall order the removal of the action to the family court . . . unless, within thirty calendar days of such arraignment, the district attorney makes a motion to prevent the removal of the action" (CPL 722.23 [1] [a]). "The court shall deny the motion to prevent the removal of the action in youth part unless the court makes a determination upon such motion by the district attorney that extraordinary circumstances exist that should prevent the transfer of the action to family court" (CPL 722.23 [1] [d]).
The Legislature did not define the term "extraordinary circumstances." As the Court of Appeals has repeatedly instructed, "[w]hen presented with a question of statutory interpretation, a court's primary consideration is to ascertain and give effect to the intention of the Legislature" (Matter of Walsh v New York State Comptroller, 34 NY3d 520, 524 [2019] [internal quotation marks omitted]; see Nadkos, Inc. v Preferred Contrs. Ins. Co. Risk Retention Group LLC, 34 NY3d 1, 7 [2019]). The Court has "long held that the statutory text is the clearest indicator of legislative intent, and that a court should construe unambiguous language to give effect to its plain meaning" (Walsh, 34 NY3d at 524 [internal quotation marks omitted]). "In the absence of a statutory definition, [the Court of Appeals] construe[s] words of ordinary import with their usual and commonly understood meaning, and in that connection ha[s] regarded dictionary definitions as useful guideposts in determining the meaning of a word or phrase" (id. [internal quotation marks omitted]; see People v Williams, 37 NY3d 314, 317-318 [2021]; People v Holz, 35 NY3d 55, 59 [2020]; Nadkos, Inc., 34 NY3d at 7; Yaniveth R. v LTD Realty Co., 27 NY3d 186, 192 [2016]).
Inasmuch as the Raise the Age legislation fails to define what would constitute "extraordinary circumstances"—with good reason, inasmuch as it would be impossible to delineate every scenario in which extraordinary circumstances should or should not be found—here, it makes sense to use the "useful guideposts" of Black's Law Dictionary and the Merriam-Webster Dictionary in defining the relevant term. The term "extraordinary" is defined as "[b]eyond what is usual, customary, regular, or common" (Black's Law Dictionary [12th ed 2024], extraordinary), or "going beyond what is usual, regular, or customary" and "exceptional to a very marked extent" (Merriam-Webster.com Dictionary, extraordinary [https://www.merriam-webster.com/dictionary/extraordinary]). The legislative history of the Raise the Age Law, which "is an important aid in understanding the meaning of its words" (Matter of Hernandez v Barrios-Paoli, 93 NY2d 781, 786 [1999]), comports with the commonly understood meaning of the term "extraordinary circumstances." "New York State Assembly members debating the Raise the Age legislation indicated that the extraordinary circumstances requirement was intended to be a 'high standard' for the District Attorney to meet, and denials of transfers to Family Court 'should be extremely rare' " (People v M.M., 83 Misc 3d 1221[A], 2024 NY Slip Op 50776[U], *2 [Youth Part, Erie County 2024], quoting NY Assembly Debate on 2017 NY Assembly Bill A3009C, Apr. 8, 2017 at 39 [hereafter, Assembly Debate]). "[T]he People would satisfy the 'extraordinary circumstances' standard where 'highly unusual and heinous facts are proven and there is a strong proof that the young person is not amenable or would not benefit in any way from the heightened services in the family court' " (People v T.P., 73 Misc 3d 1215[A], 2021 NY Slip Op 51048[U], *3 [Nassau County Ct 2021], quoting Assembly Debate at 39). Although the Raise the Age legislation, which was included in the Fiscal Year 2018 Budget, does not appear to have had an Assembly sponsor (see generally New York State Division of the Budget, The Budget Process, [*4]https://www.budget.ny.gov/citizen/process/index.html [last accessed Jan. 21, 2025]), during the debate of the budget in the Assembly, questions regarding the Raise the Age legislation were addressed, primarily, to Assemblymember Joseph Lentol. When asked to "share . . . some examples of extraordinary circumstances that might lead to a denial of transfer to family court," the Assemblymember responded: "Yeah, I think it's difficult to give firm examples. Since this a new concept, though, we want to have a - - at least a little bit of an understanding of what might be involved here. Outside of the list involving the most serious felony conduct, all cases will be presumptively transferred. The judge must look at all the circumstances of the case, as well as the circumstances - - all of the circumstances of the young person. And aggravating factors may be proven, but the court must - - court must also consider individual mitigating circumstances, as well" (Assembly Debate at 39-40). According to the Assemblymember, "[a]ggravating factors that may involve extraordinary circumstances might include proof of a series of serious crimes committed by the defendant over the course of many days. Did the defendant act in an especially cruel and heinous manner? Was the defendant the ringleader who threatened and coerced reluctant youths to participate in the crimes? Those are all things that have to be considered in determining whether aggravating factors exist" (id. at 40).
Here, the People moved to prevent removal of the action to Family Court pursuant to CPL 722.23 (1) (a), arguing that the dangerous nature of defendant's conduct constituted "extraordinary circumstances" warranting prosecution of the action in County Court. In addition, the People asserted that removal of the action to Family Court would "directly affect the confidence of the public in the criminal justice system," and that defendant—who had eight prior Family Court appearance tickets and two prior adjudications resulting in probation—was not amenable to services that would be available in Family Court. In response, defendant argued that there were no extraordinary circumstances, and asserted that his mental health diagnoses were a mitigating factor that weighed in favor of removal. The court determined that the People had established the existence of extraordinary circumstances and granted the motion to prevent removal.
I agree with the majority that the court was prohibited from considering defendant's two adjudications as a juvenile delinquent—let alone those instances in which an "appearance ticket" was issued and which did not result in an adjudication at all—in determining whether the extraordinary circumstances threshold has been met (see generally Green v Montgomery, 95 NY2d 693, 697 [2001]; People v Campbell, 98 AD3d 5, 12 [2d Dept 2012], lv denied 20 NY3d 853 [2012]; People v J.A.D., 70 Misc 3d 1222[A], 2021 NY Slip Op 50189[U], *5-6 [Nassau County Ct 2021]). The majority goes on to note that the court may, however, consider " 'the illegal or immoral acts underlying such adjudications' " (People v Gray, 84 NY2d 709, 712 [1995]; see generally People v Coggins, 198 AD3d 1297, 1300 [4th Dept 2021], lv denied 38 NY3d 1032 [2022]; People v Updyke, 133 AD3d 1063, 1064 [3d Dept 2015]). Here, however, the People did not present any evidence regarding the nature of the underlying acts that resulted in the adjudications as a juvenile delinquent. Rather, the People presented evidence of defendant's conduct after appearing in Family Court in the juvenile delinquency proceedings, including his success or failure on probation, as well as the services that he received through Family Court. Family Court Act § 381.2 "expressly prohibits the use of the AO's juvenile delinquency history and records" against the AO in any other court (J.A.D., 2021 NY Slip Op 50189[U], *5). Thus, to the extent that the majority considers defendant's response to the treatment that he received while participating in Family Court after being adjudicated a juvenile delinquent, I submit that such consideration is improper. Even assuming, arguendo, that we may consider defendant's history in Family Court to support the People's assertion that defendant was not amenable to the heightened services available, I conclude that the record does not support that assertion. During the hearing on the People's motion, the People presented evidence that the "last time [defendant] appeared in Youth Part," it was his mother who "declined services"—not defendant.
I further disagree with the majority's conclusion that the nature of the offense—the sole remaining basis upon which the court granted the People's motion—is sufficient to establish extraordinary circumstances. As the majority notes, defendant participated in a violent crime, which is exactly the type of crime the Legislature intended to address in the Raise the Age legislation (see CPL 722.23 [2] [a]). Thus, it cannot be that the violent nature of the crime, standing alone, is an extraordinary circumstance sufficient to warrant denial of removal of the proceeding to Family Court. At the time the court decided the People's motion, defendant was [*5]not alleged to have been a ringleader in the crime, to have played a significant non-bystander role in the crime, or to have personally brandished a weapon or caused injury to the victim (see T.P., 2021 NY Slip Op 51048[U], *3-4; People v J.P., 63 Misc 3d 635, 651 [Sup Ct, Bronx County 2019]; cf. People v B.H., 83 Misc 3d 1286[A], 2024 NY Slip Op 51224[U], *1-2 [Youth Part, Erie County 2024]; People v Y.L., 64 Misc 3d 664, 666-670 [Monroe County Ct 2019]). Based upon the majority's conclusion that the facts and circumstances of this case warrant a finding of extraordinary circumstances, one could question what set of facts would need to be presented that would not justify granting a motion to deny removal to Family Court under CPL 722.23 (1).
Entered: February 7, 2025
Ann Dillon Flynn
Clerk of the Court